**SCHWABE, WILLIAMSON & WYATT, P.C.**
Mario E. Delegato, OSB #195840
Cordelia Addington, OSB #243899
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: (503) 222-9981
Facsimile: (503) 796-2900
mdelegato@schwabe.com
caddington@schwabe.com

**SHOOK, HARDY & BACON L.L.P.**
Joseph Blum (*PHV Application to be filed*)
Erin Leffler (*PHV Application to be filed*)
Julia Kurtz (*PHV Application to be filed*)
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Telephone: (215) 278-2555
jblum@shb.com
eleffler@shb.com
jkurtz@shb.com

*Attorneys for Defendant Zoetis, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| COLUMBIA VETERINARY HOSPITAL,<br><br>Plaintiff,<br><br>vs.<br><br>ZOETIS, INC.,<br><br>Defendant. | Case No. 3:26-cv-01863-AN<br><br>**DEFENDANT ZOETIS, INC.'S RULE 12 MOTION TO DISMISS**<br><br>(Oral Argument Requested) |



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

## LR 7-1 CERTIFICATION

Pursuant to L.R. 7-1(a)(1)(A), counsel for Defendant Zoetis Inc. ("Zoetis"), hereby certify that they have met and conferred with counsel for Columbia Veterinary Hospital ("CVH") by telephone concerning the subject of this Motion. The parties were unable to resolve their dispute.

## ZOETIS, INC.'S RULE 12 MOTION TO DISMISS

Zoetis moves to dismiss Plaintiff's Complaint (ECF 1) with prejudice pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(6), Local Rule 7-1, and the Memorandum of Points and Authorities included herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

This case concerns Vetscan Imagyst® ("Imagyst"), a product developed and sold by Zoetis, a global animal health company. Imagyst is a diagnostic platform that leverages state-of-the-art Artificial Intelligence software to assist in the collection, organization, and assessment of veterinary imaging. Imagyst is sold to clinics as a tool to assist with providing veterinary services to patients. Zoetis has never represented or advertised Imagyst as a substitute for the practice of medicine by a licensed professional, nor would it be reasonable for clinicians to rely on it as a substitute for such judgment, yet that is exactly what the Complaint alleges.

CVH alleges that over a year after purchasing Imagyst, one of its veterinarians relied exclusively on an Imagyst suggestion of "[i]ndeterminate results" as a statement of factual certainty rising beyond an "Imagyst-diagnosed" medical opinion, and based on that, performed an invasive surgery on a patient. (Compl. at ¶¶ 28-29.) Although additional pathology testing later confirmed cancer, leading to a second surgery during which the patient succumbed to complications, Plaintiff nevertheless seeks to attribute those events to Imagyst's earlier "indeterminate" assessment. (*Id.* at ¶¶ 30-33, 42.) The Complaint alleges that Zoetis's marketing from over a year before this single "indeterminate" diagnostic suggestion forms the basis of fraud and violations of Oregon's Unlawful Trade Practices Act ("UTPA").

The Complaint must be dismissed with prejudice as neither claim will ever be actionable. The UTPA claim is not actionable because Plaintiff is a business that purchased Imagyst for



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

business purposes, and UTPA does not protect businesses. The fraudulent inducement claim is not viable because the Complaint fails to allege an actionable misrepresentation, reasonable reliance, or a causal connection between any statement by Zoetis and the alleged harm.

**FACTS ALLEGED**

The following facts are alleged and assumed true only for purposes of this Motion. CVH purchased Zoetis's Imagyst diagnostic platform based on Zoetis's representations of the platform's capabilities. Zoetis made representations related to Imagyst's general capabilities, stating it is the "world's most capable veterinary AI analyzer," that it would "[t]ransform your clinic with seven-in-one diagnostics * * * offering highly accurate sample analysis," and that it provides "expert-level results in minutes." (Compl. ¶ 12.)

In the document titled "Digital Diagnostic Artificial Intelligence in Veterinary Medicine: The Future Is Now," Zoetis represented that there were "rigorous validation studies showing that VETSCAN IMAGYST's AI-derived diagnostic results are comparable to results from expert * * * clinical pathologists." (*Id*. at ¶ 13.) Zoetis also made representations about Imagyst's capabilities of identifying pathology suggestive of cancer, stating Imagyst "Identifies Findings Suggestive Of * * * Mast cell tumor." (*Id*. at ¶ 14.) Zoetis represented that when scanning for "AI Masses," Imagyst "will" "Identif[y] Findings Suggestive Of [cancerous] Mast cell tumor[s]" if directed to scan under the diagnostic category of "Skin/subcutaneous Mass Clinical Profiles." (*Id*. at ¶ 16.) And Zoetis represented that "Additional diagnostic categories not listed above might result in *indeterminate results*, which do not fit into a clinical profile. *In this case, Add-on Expert Review is always recommended*." (*Id*. at ¶ 17, emphasis added).

CVH entered into an agreement with Zoetis in August 2024. (Compl. ¶¶ 21-23). The Complaint further alleges that in October 2025, CVH submitted slides from a dog with a neck mass to Imagyst under the "Skin/subcutaneous Mass Clinical Profiles" category. Imagyst reportedly identified the presence of "Aggregate Mast Cell" and "Spindle Cells" but issued an assessment that was only "Suggestive of inflammatory lesion" and "Indeterminate," rather than diagnosing a mast cell tumor. (*Id*. at ¶¶ 27-28.)



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

CVH alleges that it relied on that assessment in selecting an initial surgical approach and subsequently learned through testing performed by Oregon State University Veterinary Diagnostic Laboratory that the mass was a high-grade mast cell tumor with incomplete surgical margins. (*Id.* ¶¶ 24-33). CVH alleges that a second surgery became necessary because of the initial diagnosis, that the dog later died following the second procedure, and that CVH suffered financial and reputational harm as a result. Based on those allegations, CVH asserts claims for fraud in the inducement and violation of the Oregon Unlawful Trade Practices Act and seeks rescission, damages, attorney fees, and injunctive relief. (*Id.* ¶¶ 34-48, 50-71).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A motion to dismiss for failure to state a claim must be granted when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The plausibility standard asks for more than a possibility that a defendant has acted unlawfully. *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017).

In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pled material facts and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Plaintiff is entitled to a presumption of truth of allegations that do not "simply recite the elements of a cause of action, but [. . .] contain sufficient allegations of underlying facts to give fair notice and to enable the



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

opposing party to defend itself effectively." *Starr*, 652 F.3d at 1216. In contrast, a court need not credit legal conclusions "couched as []factual allegation[s.]" *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

### I. This Commercial Dispute Falls Outside the Scope of the UTPA.

Plaintiff's UTPA claim fails because the statute's protections are limited to consumer transactions, not commercial transactions like this. The statute expressly applies to the sale of "goods [and] services" intended "primarily for personal, family or household purposes." ORS 646.605(6)(a). *See Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n 4, 566 P.2d 1177 (1977) (noting the UTPA protects "consumers rather than businesses."). *See also Ave. Lofts Condominiums Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1015 (D. Or. 2014) ("Oregon courts have long held the UTPA 'applies only to consumer transactions; it does not regulate commercial transactions.'"). Consistent with that principle, courts applying Oregon law will not extend the UTPA's protections to disputes arising from transactions between businesses. *Victaulic*, 24 F. Supp. 3d at 1015 (citing *L & A Designs v. Xtreme ATVs, Inc.*, 2012 WL 1532417, at *4 (D. Or. Apr. 30, 2012)).

When assessing whether the UTPA applies to a particular transaction, the relevant inquiry is whether the goods at issue are customarily purchased for personal, family, or household use and were purchased for such use by the plaintiff. *Victaulic*, 24 F. Supp. 3d at 1016 (citing *Searle v. Exley Express*, 278 Or. 535, 540, 564 P.2d 1054 (1977)). This two-part test examines both the type of product or service involved and the purpose for which it was purchased:

> As explained by the Supreme Court in *Searle v. Exley Express*, "[i]f goods are customarily bought by a substantial number of purchasers for personal, family or household uses and were, in fact, bought by the plaintiff for his or someone else's use and not for resale, the [UTPA] applies." Thus, *Searle* embodies a two-part test: Is the real estate, good, or service at issue customarily purchased by a substantial number of people for personal, family, or household use (the objective component) and was it, in fact, purchased by the plaintiff for personal, family, or household use, rather than for commercial use or resale (the subjective component).

*Fowler v. Cooley*, 239 Or. App. 338, 344–45 (2010) (citing Searle, 278 Or. at 540).



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

Here, neither prong of that test is satisfied. Objectively, Imagyst is not a good or service purchased by consumers for personal, family, or household use. Instead, it is a tool used by licensed veterinary professionals in the course of providing veterinary services. (*See* Compl. ¶ 12.) And subjectively, Plaintiff did not purchase Imagyst for personal, family, or household use. Instead, Plaintiff, a veterinary hospital, entered into an agreement with Zoetis to acquire Imagyst for use in its veterinary practice. (*See Id*. ¶¶ 7, 21-22.) Plaintiff alleges it used Imagyst to provide diagnostic services to its patients and seeks recovery for losses allegedly resulting from that use. (*See Id*. ¶¶ 24-33, 47-48, 70-71.) Because neither prong is met, the UTPA does not apply.

Plaintiff apparently attempts to plead a basis for the UTPA to apply by alleging Imagyst was used by their business to diagnose conditions in "personal, family or household" pets. (*Id*. ¶ 63.) But the relevant UTPA inquiry focuses on the transaction between the plaintiff and the defendant, not the downstream use of the plaintiff's professional services. Accordingly, Plaintiff's UTPA claim fails as a matter of law and should be dismissed with prejudice.

**II. The Complaint Does Not Plead Fraudulent Inducement.**

Oregon substantive law applies to this Court's exercise of diversity jurisdiction. *Alton v. Medtronic, Inc.*, 970 F. Supp. 2d 1069, 1105 (D. Or. 2013) (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir.2003)). Under Oregon law, fraudulent inducement requires "proving that the [defendant] made a false representation of material fact and that the person to whom the representation was made was induced to enter the agreement in reliance on that misrepresentation." *State by & through Bus. Dev. Dep't v. Huttenbauer*, 301 Or. App. 332, 344–45 (2019) (citing *Graves v. Tulleners*, 205 Or. App. 267, 276-77 (2006)).

Here, nearly every element is lacking. The Complaint alleges nonactionable puffery and generalized statements, and there are no facts alleged that suggest any particular statement Zoetis made before the sale of Imagyst to Plaintiff was false, much less that Zoetis knew it was false. And fatally, the Plaintiff's allegations of reliance are nowhere near reasonable. The alleged fraud is a single instance of user error that occurred after the sale of Imagyst to Plaintiff. When using the product, a CVH veterinarian apparently interpreted an Imagyst "indeterminate results" suggestion



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

as an affirmative diagnosis of "no cancer," and exclusively relied on that mistake to perform a surgery in a particular way. The Complaint struggles to tie this user error back to Zoetis marketing about product performance as affirmative representations that the Imagyst platform is 100% infallible and that CVH purchased the platform because it reasonably believed Imagyst "would" identify any imaging suggestive of cancer under any circumstance. (*See* Compl. ¶¶ 16-20.) Altogether, the Complaint is insufficient to state a claim for fraud.

***A. The Complaint Does Not Allege Factual Representations.***

The Complaint alleges only generalized marketing statements and puffery of product performance. Fraud is actionable where concrete and objectively verifiable assertions are alleged, as such statements can be proven false and are capable of inducing reasonable reliance. *State ex rel Rosenblum v. Living Essentials, LLC*, 335 Or. App. 30, 43, 558, opinion adhered to as modified on reconsideration sub nom., *State ex rel. Rosenblum v. Living Essentials, LLC*, 336 Or. App. 1 (2024). But generalized puffery is not actionable, and "a seller's statements constitute puffery if they are general or subjective, that is, insusceptible to being proven true or false, such that they are unlikely to induce consumer reliance." *Id.*

Here, Plaintiff attempts to convert generalized promotional statements and descriptions of a platform's capabilities into enforceable guarantees of perfect diagnostic performance. But statements such as "world's most capable," "transform your clinic," "expert-level results," and "highly accurate analysis" are classic puffery because they are subjective, aspirational, and not objectively verifiable. (Compl. ¶ 12.) Even the more specific statements alleged regarding Imagyst's mast cell tumor identification capabilities describe general product performance, not a warranty that it will correctly diagnose every case. (*See id.* at ¶¶ 13-18.) Such statements are incapable of being proven false. For example, and ignoring the fact this does not appear in the representations alleged, CVH alleges it interpreted Zoetis marketing as representing that Imagyst can "identify and diagnose mast cell tumors as accurately as existing human experts." (*Id*. at ¶ 22.) That is not an objective fact capable of being proven true or false. The "human experts"



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

presumably are veterinary pathologists who provide *diagnoses*, which are by definition medical *opinions*.

***B. The Complaint Does Not Allege Zoetis Knowingly Made False Representations.***

There are no facts alleged showing that Zoetis made an alleged representation with known falsity; instead, the only basis for falsity alleged in the Complaint is a single isolated failure that occurred over a year after the transaction, which was just as likely to be a user error than a product failure. "Intent to deceive in an action for fraud can be established by proof that defendant knew the representation was false or that it was made recklessly without regard to its truth or falsity." *Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 112 (1981) (citing *Huszar v. Certified Realty*, 278 Or. 29, 32 (1977); *Bausch v. Myers*, 273 Or. 376, 379 (1975)). Crucially, "[t]o amount to a fraudulent representation sufficient to constitute actionable fraud, the intention not to perform must exist at the time the promise to do something in the future is made, and such an intent formed later and carried into effect is insufficient." *Conzelmann v. Northwest Poultry & Dairy Products Co.* (1950) 190 Or. 332, 351. For that reason, the "failure to subsequently perform the promise is, of itself, insufficient evidence of fraud." *Weiss v. Nw. Acceptance Corp.*, 274 Or. 343, 346 (1976).

Here, the Complaint alleges that "Zoetis knew its representations were false, or made them recklessly without regard for their truth, because Zoetis was aware or should have been aware that Imagyst would fail to properly diagnose mast cell tumors." (Compl. at ¶ 53.) This is a legal conclusion without any support from the facts alleged. In a light most reasonable to CVH, the Complaint's exclusive proof of falsity is a single instance of the use of Imagyst, which was just as likely to be an error of the user than an error with Imagyst's suggested finding. But one mistake does not transform a general product performance into a known or recklessly false misrepresentation. Nor did Zoetis represent that Imagyst would accurately relay diagnostic findings with 100% infallible accuracy in every instance of use.

***C. The Complaint Does Not Allege Reasonable Reliance on a Representation.***

Even in a light most favorable to CVH, each instance of reliance alleged in the Complaint is unreasonable and unjustified. "[T]he standard for reasonable or justifiable reliance in the context



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

of fraud is both subjective and objective." *Cocchiara v. Lithia Motors, Inc.*, 353 Or. 282, 298 (2013). *See Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 580 (Or. Ct. App. 2007) (affirming a directed verdict for lack of reasonable reliance because the defendant was a sophisticated party with resources to question and investigate the veracity of misrepresentations) ("One of the circumstances to be taken into consideration is the sophistication of the party asserting fraud.").

Here, CVH is a sophisticated business operation run by licensed veterinarians to practice veterinary medicine. For its alleged reliance to be reasonable, an objective veterinarian must be capable of believing that Zoetis representing that Imagyst "Identifies Findings Suggestive Of * * * Mast cell tumor" meant Imagyst would always and infallibly identify pathology in every instance (Compl. at ¶ 14), that technology is even capable of making pathological suggestions that are infallible veterinary diagnoses regardless of circumstance (*see id*. at ¶¶ 15–20), and that somehow, Zoetis's statement that "Add-on Expert Review is always recommended" for "indeterminate results" reported for additional diagnostic categories means that additional review *is never required* for Imagyst's listed diagnostic categories (*id*. at ¶ 17). Put simply, a licensed veterinarian would have to believe the string of marketing statements alleged in the Complaint amounted to a factual guarantee that "(1) Imagyst could and would [always] determine whether a subcutaneous mass was a cancerous mast cell tumor without additional human review, because that was a listed diagnostic category; and (2) for other non-listed categories, however, Imagyst could require further human review." (*Id.* at ¶ 18.) No reasonable juror can find that a sophisticated veterinarian operation, in the business of providing *medical opinions* and recommended treatments, is capable of reasonably interpreting those statements as a promise by Zoetis that Imagyst is so accurate, each of its expressly "suggestive" findings are in fact more than suggestions, and more than diagnostic opinions, they are infallible factual truths.

/ / /

/ / /



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

## III. No Amendment Can Save the Claims.

Because no facts can transform this transaction into one covered by UTPA and no facts can transform Zoetis's generalized puffery into known false representations CVH justifiably relied upon, amendment is futile and the Complaint's claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims, and find that any further amendment would be futile. Therefore, dismissal with prejudice is warranted.

DATED: September 15, 2026 SCHWABE, WILLIAMSON & WYATT, P.C.

By: *s/ Mario E. Delegato*
Mario E. Delegato, OSB #195840
Email: mdelegato@schwabe.com
Cordelia Addington, OSB #243899
Email: caddington@schwabe.com
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: (503) 222-9981
Facsimile: (503) 796-2900

AND

SHOOK, HARDY & BACON L.L.P.
Joseph H. Blum (*Pro Hac Vice Application to be filed*)
Email: jblum@shb.com
Erin L. Leffler (*Pro Hac Vice Application to be filed*)
Email: eleffler@shb.com
Two Commerce Square
2001 Market Street, Suite 3000
Philadelphia, PA 19103
Telephone: (215) 278-2555
Facsimile: (215) 278-2594

Julia F. Kurtz (*Pro Hac Vice Application to be filed*)
Email: jkurtz@shb.com
JPMorgan Chase Tower
600 Travis St., Suite 3400
Houston, TX 77002
Telephone: (713) 227-8008
Facsimile: (713) 227-9508

*Attorneys for Defendant Zoetis, Inc.*



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900

**CERTIFICATE OF SERVICE**

The undersigned declares under penalty of perjury, under the laws of the State of Oregon, that on September 15, 2026, I arranged for service of the foregoing DEFENDANT ZOETIS, INC.'S RULE 12 MOTION TO DISMISS on the party to this action as follows:

Nathan R. Morales, OSB #145763
STOEL RIVES, LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: (503) 224-3380
Facsimile: (503) 220-2480
Email: nathan.morales@stoel.com

by:

- ☒ U.S. Postal Service, ordinary first class mail
- ☐ U.S. Postal Service, certified or registered mail
- ☐ return receipt requested
- ☐ hand delivery
- ☐ facsimile
- ☒ electronic service
- ☒ other (specify) Email (courtesy copy)

*s/ Mario E. Delegato*
Mario Delegato, OSB #195840



Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone 503-222-9981
Fax 503-796-2900